104

District Court, E. D. Pennsylvania.
February 14, 1930.

Aaron Goldsmith, of Easton, Pa., and D. Alexander Wieland, Joseph J. Brown, and John Arthur Brown, all of Philadelphia, Pa., for plaintiff.

Smith & Paff and E. J. & J. W. Fox, all of Easton, Pa., and Umsted & Wolfe, of Philadelphia, Pa., for defendants.

DICKINSON, District Judge. This is an action at law. The number of transactions out of which the cause of action advanced arises, if at all, is so large that the separate paragraph averments of the statement of claim reach 115. Except for one feature (and this does not touch the ground of demurrer), the fact situation could be outlined in a few words. Generally speaking, the averments are of payment made by an impending bankrupt to creditors which the trustee in bankruptcy seeks to recover because preferential under the Bankruptcy Law. The suit, however, is not against the creditor so paid, but it is against third parties and against them as a partnership.

There are many averments in the statement of claim, the pertinency of which do not appear at first sight, but the value of which will doubtless be disclosed as the full fact situation is developed. We state them, however, as given. One is (paragraph 2 of the statement) that on January 10, 1927, before the bankruptcy of the Triangle Silk Manufacturing Company, one of the defendant firm appeared as plaintiff in a bill in equity under which a receiver was appointed for the company on the ground of its insolvency. We are unable as yet to see what this has to do with the cause, except perhaps as evidential of knowledge of insolvency.

The defendants by paragraph 6 are averred to be partners doing business under a trade firm name. Just what bearing this relation of partners, coupled with the averments next referred to of independent acts of the individual members of the firm, has upon the case, must likewise await further developments. These independent individual acts are as averred in paragraphs 7 and 8 that each of the defendants was a stockholder and director of the company and one vice president and the other treasurer. A further averment (paragraph 10) is that the two defendants entered into an agreement with the company by which they agreed to "advance their credit" to the company, and for this service they were to receive a 5 per cent. commission. There is no averment that this was a firm contract. The implication at least is that it was a joint individual one. The four-month period prior to bankruptcy goes back to September 21, 1926. The averment of paragraph 15, which we assume to be typical of all the claimed preferential payments, is that a sale was made to the company for which a "trade acceptance" was drawn on the defendants and accepted by them and paid by the company out of its own funds within the four-month period. This clearly avers the creation of a debt and its payment within the period, and other averments show the transaction to have been voidable by the trustee against any one

having the knowledge which the defendants are averred to have, but which there is no averment that the creditor had. There also is an averment that the defendants were sureties for the defendant, and that payment of it was in relief of their obligation. There is again nothing to indicate whether the defendants jointly or as a firm were such sureties. With respect to the last-mentioned averment, it does appear from the contract of suretyship or guaranty into which the defendants entered that the obligation was their joint individual obligation and not that of the firm.

■ The affidavit of defense in lieu of a demurrer under the Pennsylvania Practice Act of 1915 (Pa. St. 1920, § 17181 et seq.), although called a statutory demurrer, is more strictly and accurately the raising in limine of questions of law which arise out of the statement of claim so that they may be ruled in advance of trial. We mention this because upon demurrer judgment is entered upon the whole record, and for all practical purposes this is still true and still the practice. Formally, however, all the court does is to answer the questions of law raised by analogy to the answers which appellate courts make to certified questions where this practice prevails. Under the Pennsylvania Practice Act of 1915, the court, it is true, makes such order as may be called for, but this is after its answers to the questions raised, and for the purpose of carrying the law of the case as thus found into effect.

We in consequence limit ourselves to answers to questions raised by this affidavit of defense. They are two:

■ (1) Does this statement of claim disclose facts from which an unlawful preferential payment can be found?

Our answer is that it does. The question is predicated upon a confusion of evidentiary facts with ultimate fact averments. The ultimate fact of a preferential payment is averred.

In stating the second question, we paraphrase the affidavit of defense, as we are unable to state the question intelligibly in any language of our own.

(2) From the facts alleged in the statement of claim, is each separate payment to be set off by each separate credit under the provisions of section 60c of the Bankruptcy Act (11 USCA § 96(c) or the principles of equitable set-off?

Our difficulty in dealing directly with an answer to this question is found in the frank admission that we have not grasped the theory upon which plaintiff is seeking judgment nor the theory of the defense interposed, or we have not understood the fact situation presented.

Waiving the question of how any one can be made answerable for a debt growing out of transactions with which the alleged debtor had nothing to do, there are other questions which thrust themselves upon the mind. Here the action is against a partnership, and grows out of transactions with which the partnership had nothing to do. Apparently the cause of action is based upon the fact that individuals who happened at the time to be members of a firm did something as individuals in no wise connected with the firm business, but, because they happen to be, not only members of the firm, but to compose the firm, this latter fact makes the firm liable for what they did. This question we waive, as we have said, because it is not raised.

■■ The very capable counsel for the defendants admits (except as the admission is modified by what is called the right to a set-off) the liability of the defendants. Because of this, we do not discuss the question. The admission is, however, upon the theory that the defendants had made the sales to the bankrupt, and received the preferential payments of debts due to them. With this thought in mind, let us consider the question of equitable payment and set-off under the law of Pennsylvania and then the statutory set-off allowed by section 60c of the Bankruptcy Law. In the first place, we must distinguish between payment and set-off. Payment is a defense at common law, and, as such, is in need of no aid from either equity or statutes. Under the former system of pleading which prevailed in Pennsylvania, the defense was introduced by and under the simple plea of payment. The debt no longer existed, because it had been paid. Payment, however, had not merely to be pleaded; it had to be proven, and it might be that the proofs did not show payment in law which must be payment in fact. It might again, however, be that, although there was no payment in strict fact, and hence none in law, the facts and circumstances might be such as to be in equity the equivalent of payment. This meant no more than that, when the parties were reciprocally both creditor and debtor, and under all the facts and circumstances it was inequitable for one to claim what was due him without allowing credit for the counterclaim, the one was said to be in equity payment pro tanto of the other.

In jurisdictions in which the distinction between law and equity was preserved and the latter administered through separate courts of chancery, a defendant so situated was doubtless forced to go before a chancellor to get the benefit of his equitable defense, but in Pennsylvania, where we have no separate court of chancery nor a court of equity in the chancery sense, but have only courts of common pleas sitting in equity, with such chancery powers, and only such, as have been conferred by statute, the courts of law from necessity applied equitable principles in common-law trials, and equitable defenses were always admitted. This is the sense in which the phrase was used that in Pennsylvania an action in assumpsit was a bill in equity. It meant that a defendant with a defense which was good in equity need not have recourse to chancery, but could introduce the defense at law. When this was done, however, it was introduced under the plea not of "payment," but "Payment with leave," etc., which was short for the plea of payment with leave to offer in evidence special facts and circumstances to prove that it would be inequitable in the plaintiff to enforce payment of the debt due him without allowing credit to the defendant for his counterclaim. There were cases, however, in which the counterclaim was payment neither at law nor in equity, but there were simply a claim and a counterclaim. This situation was met in Pennsylvania as early as 1705 by the statutory defense of what is now called set-off. Any one who reads this act will observe that the draftsman of it was familiar with the plea of "Payment with leave," etc., and planned that the right to "defaulk," as he phrased it, one account from another would do so under that plea. The practice grew up, however, of specially pleading "set-off." Lawyers out of abundant caution always pleaded all three—"Payment, Payment with leave, etc., and set-off." Obviously a creditor, sued to disgorge moneys which under the Bankruptcy Law he had no right to retain, could not plead payment either at law or in equity, nor could he plead set-off because the two debts were not due in the same right. This would compel him to have recourse to section 60c (11 USCA § 96 (c). This was enacted to do justice to preferred creditors under the conditions named therein. As we read it, the law gives him the benefit of a plea of payment. A creditor who had received a preferential payment, but had returned it when afterwards sued by the trustee, could surely set up the defense of payment. Section 60c (11 USCA § 96(c), as we read it, allows him under certain circumstances to do this by treating an account as payment. If, for instance, after receiving a preferential payment, he had handed a part or the whole of it back, not in money but in merchandise, he might treat this return payment as if made in money. If, however, he is paid for the second debt, or has security so that he will be paid for it, then, in the view of 60c (11 USCA § 96(c), he is in the same position as if the second sale had not been made.

We have no such grasp of the facts of this case as to make us sure how the application of these principles will affect the judgment to be rendered in this cause on the averments of the statement of claim.

We dispose of the affidavit raising questions of law by refusing to rule them in favor of the defendants, with leave to them to file an affidavit of defense to the fact merits of the cause within fifteen days, in accordance with the Practice Act of 1915. If we have misapprehended the facts as so far pleaded, we will reconsider the case on a motion for a reargument.